Thank you, your honor. This case, the government will not rehash the arguments it just made before your honors in the prior case. However, as the court noted, there are some factual differences between these cases. In this case, the notice to appear did not include the address of the immigration court in addition to the date and time of the removal hearing. However, the argument and the finding by the district court that that also stripped the immigration court of jurisdiction over the matter has been foreclosed by first matter of Rosales Vargas issued by the Board of Immigration Appeals, and then secondly, by Aguilar Freeman, which addressed the same exact issue, really, is whether the jurisdiction immigration court is affected by, in the words of that case, the date, time, or place of the removal hearing at issue. And the second difference with this case is also a factual difference in that here, the certificate of service on a notice of hearing, which is identical, does not indicate that it was served by fax. Instead, it indicates personal service, quote, care of a custodial officer at the detention center, where the, at that time, respondent, at this time, Apelli, was residing. The district court, on its order at page four of the government's excerpts here, indicated that the notice of hearing was served on the defendant, and the defendant here does not contest service. He simply doesn't recall, according to his declaration that was submitted below, whether or not that he received that hearing service. So, the only evidence we have in the record is a certificate of service indicating that it was served on the defendant. There's no evidence in the record rebutting that or even contesting it. So, the district court's order, however, found that jurisdiction was still not vested in the immigration court here, because it did not find that the hearing notice was timely. But the reason the district court is incorrect there is because in order that it is timely, the district court reached back to section 1229, which was a section that this court, in Karen Giffey, had already found had nothing to do with subject matter jurisdiction, and yet pull out from that statute yet another jurisdictional requirement, this one requiring 10 days prior service. 10 days prior service, which is explicitly not to vest jurisdiction, but instead to provide the respondent in removal proceedings with the opportunity to secure counsel. Those are the words of the statute, and not jurisdictional requirement, it's a procedural requirement. And in addition, in the proceedings here... Let's say it doesn't describe the idea, but the statute does require 10 days, he doesn't get it. What, are you saying there's no impact at all? What if he got it 10 seconds before the hearing? He's dragged in there, no counsel, no anything, either by himself. I'm just hypothetical. He's handed to me when he's dragged in, he has no idea why he's there. Is that what the law provides? First, recognizing those aren't the facts of this case, but if that were the case, the law would not reach into the immigration court's lawful authority to hear the case and strip that authority from the immigration court. What the law would provide is that there has to be some sort of remedy, and where the remedy would be fact-determinant. In the event where a respondent in a removal proceedings received notice 10 seconds before their hearing, and then was placed in front of the IJ, the remedy would be for the IJ to then provide at least 10 days so that the alien could secure counsel, as anticipated by the statute. But it would just not be a jurisdictional requirement. Counsel, in fact, of course, the IJ is not usually going to be told by an alien in that situation that he's just been dragged in. He might, but I thought your argument was going to be, in this case, that it was more than 10 days from the NTA, but it was only less than 10 days from the notice of hearing. So assuming that he knew that he should get counsel, he did have 10 days. Am I right about this one? That's correct, your honor. He was served the NTA September 17th. His first removal hearing did not occur until October 1st. The notice of hearing was served in the interim about five days before the removal hearing. And at the removal hearing, and this is important, the immigration judge, because we do have the audio recording, it was filed as Exhibit 1 with this court, he informed the defendant as part of a group hearing that he did have the right to counsel, and that in the immigration judge's time to find an attorney, all they have to do is ask. When the defendant was called individually, the immigration judge didn't even wait for the defendant to ask. The IJ offered him an opportunity affirmatively to find an attorney, and the defendant replied that he did not want an attorney and indicated he wanted to proceed that day, which is what the immigration judge did in order to remove him at the conclusion of the hearing. I listened to that same hearing, and we do have notes, I think, of the U.S. counsel that Mr. Del Carmen was pretty dense or not well responsive in terms of what his waivers might have meant. Does that mean anything, or does that offer any opportunity? Do we have a finding that he was voluntary, he was knowledgeable and voluntary in his waivers? Well, again, your honor, if it was a question of waiver, we're no longer talking about subject matter jurisdiction. If we were, then the waiver would be kind of useless. You can't waive the lack or presence of subject matter jurisdiction. I agree with you there, counsel. Again, I'm kind of looking at the avenues of attack, because here again, on page four of your brief, you say he waived appeal, and you cite ER7, which is just a nonsensical page. ER14 is the order that has a circle little waiver, and then later at a different point, you cite the minutes of the recording, which I did listen to, and that's where, at least to me and apparently to others, it wasn't extremely knowledgeable. Is that an avenue of attack that he can raise on remand? Let's say, let's suppose that you win on your Karen Geethy-Aguilar-Furman argument, a district court got it wrong. What happens when we go back? Then we would be left with the other argument that the defendant raised below, which is that the hearing didn't comport with due process for reasons other than the immigration court not having jurisdiction, and yes, whether or not the defendant waived would be an issue to be litigated below. The court did not actually address the due process argument below. Does that require us on its own to reverse and the court could address that issue? If the court agrees with the government in this appeal, then the case would go back and the district court would have to face that issue. As noted in the government's brief, though, it does appear as though both parties have reached the conclusion that if this court were to determine that the IJ below or in their removal proceedings did not err in finding that Mr. Del Carmen Abarca indeed had been convicted of an aggravated felony at the time of his removal proceedings, and we're running short on my time here, but this is quite detailed in the government's reply brief, then this court can address that issue as well and find that there was no due process error. On that point, and I'm going to ask your colleague this question too, it appears to me that both sides want us to decide the voluntary departure issue on the eligibility and whether was aggravated felony or not, whether the IJ had an obligation to inform the defendant of that. Is that something that the government wants this court to decide? Yes, just if nothing else for judicial economy, it's a pretty clear issue. It's a matter of interpretation of law. I think all would be best served by this court making a determination as whether or not that conviction constituted an aggravated felony and then remand to the district court to address the issue of plausibility if it disagreed with the government and found that not an aggravated felony, therefore preserving the defendant's right to make that plausibility argument. Because in the government's view, these are simply legal issues that we'll either have to reach now or potentially later. That's correct, your honor. Yes. Very well, do either of my colleagues have additional questions for the government on this case? If not, let's go to Mr. Shelton on behalf of Del Carmen Abarca. Thank you, your honors. Paul Shelton, counsel for Rubicel Del Carmen Abarca, 19-30153. First to address Judge Bennett's question at the end. Yes, in the event the court agrees with the government on the Pereira-Keringithia analysis, I do want this court to decide whether Mr. Del Carmen Abarca was eligible for voluntary departure. I believe the record is sufficient before this court to decide that from a factual and legal basis. And frankly, I think it's sufficient for this court in terms of the record to affirm also on the prejudice analysis. I've briefed this as to why Mr. Del Carmen Abarca stated a plausible claim for prejudice in his briefing. The United States chose not to respond or dispute prejudice and chose not to at the evidentiary hearing. So if this court remands for prejudice, it's effectively giving a third bite at the apple to try and address that. So I believe this court can affirm prejudice. Are you referring to D3 or are you referring to prejudice in some other context? Prejudice for D3 as to the alternative due process argument. We are maintaining that we don't have to satisfy D3 with respect to Pereira, but as with respect to due process, we understand that we do and we believe we have. Would still have to be D1 and D2. Yes, and we believe we've satisfied all aspects of D for the due process issue, Your Honor. Judge Bennett. Yeah, I'm sorry, Judge Boggs, I didn't mean to interrupt. No, I'm finished. So here's my question on the voluntary departure issue. We said in Vidal-Mendoza, IJs are not expected to be clairvoyant in terms of the advice that they give people before them in immigration court. Why for your client to have told he was eligible for voluntary departure, why wouldn't the IJ have had to have been clairvoyant? Because it seems to me that the state of the law at the time your client appeared before the IJ was that this had been treated in the Ninth Circuit as an aggravated felony. And although one of the cases or maybe two of the cases in which that was at issue was on appeal, where in the law does the IJ have to give this kind of advice just because it's possible the law might change? Your Honor, I'll try to pull it up during my argument. I'm set for argument in a different case in Seattle by video in a case called Landeros-Morales, and I'll get that case number in brief. But there is case law within the Ninth Circuit that says in the event there's a change in the law after removal proceedings, certain changes in the law do have retroactive effect. For instance, the issue in that case is that the defendant should have been found eligible for 212C cancellation of removal relief. And at the time of his removal hearing, that's not what the law said, and the Ninth Circuit subsequently recognized it. And there is Ninth Circuit case law that specifically says that that should have applied retroactively, and it was a due process issue for the judge not to have known that or not to have made that ruling. So there is case law in some issues of law. Go ahead, Judge. No, but here what we're talking about is what the IJ should have told your client. So what in your view should the IJ have told your client here, specifically? I believe the IJ should have... Well, first, we don't know that the IJ, from my recollection, found him ineligible for voluntary departure. He didn't get into that level of analysis about why, but he should have found that he was eligible because his conviction was not an aggravated felony, and he should have permitted him to make a record arguing for voluntary departure. So even though at the time no one had said in the Ninth Circuit that it wasn't an aggravated felony, your view is that the IJ still should have told your client not an aggravated felony, eligible for voluntary departure, even though at the time he wasn't actually eligible for voluntary departure given the state of the law at that time? Well, I think my argument is, Your Honor, that he was eligible at that time and that the state of the law was clarified in the Ninth Circuit decision. I don't think the Ninth Circuit changed the law to say previously you were not eligible, now you are. I think the Ninth Circuit simply clarified what it means to be an aggravated felony when you have a state offense that is a state felony but is not a federal felony. I think the Ninth Circuit decision that the government cites clarified the law. I don't think it changed the law. So I think the law at the time of the removal hearing was that he would have been eligible. That simply wasn't recognized until after. Based on what case that was extant at that time? Your Honor, I don't believe a case had explicitly stated at that time what this is. I think the Ninth Circuit did not end up getting the opportunity to explicitly address it until after. And that is the problem. It does require some clairvoyance, but I think the important point is the Ninth Circuit did not change the law. So the immigration judge still got the law wrong. It's just that the Ninth Circuit had not so told him until after. So it wasn't that the judge was right and Ben was wrong. It's that he was wrong at the time, but the Ninth Circuit had not spoken to why he was wrong. Well, it strikes me more than... How's the IJ supposed to figure that out if we haven't said so? Well, Your Honor, if the Ninth Circuit hasn't spoken one way or another, I think the IJs have to essentially do their best to figure it out. And one would hope the IJ would reach the correct if they don't. That's what the Ninth Circuit is there for to say later. No, the law is actually this. Although the BIA had spoken in the Ninth Circuit, right? I mean, even though they said to the courts, this isn't precedential. The BIA had basically said people in your client's position at the time your client went before the IJ were not eligible for a voluntary departure. I believe there was a BIA ruling to that effect, Your Honor. Of course, the Ninth Circuit ultimately trumps the BIA. So if both the immigration court and the BIA get it wrong, again, it is the Ninth Circuit who ultimately settles the law. And the Ninth Circuit did subsequently clarify that he was eligible for voluntary departure. Unless the courts have any other questions about the due process issue, I do briefly want to speak to the Pereira issue. Specifically, Judge Smith posed the hypothetical. What if the notice of hearing was served the day before or 10 seconds before? And that is an issue we have to grapple with in this case because the notice of hearing in this particular case was only served one day, or sorry, closer in time prior. It was served on September 26th. And it was served, this is an important point the government glosses over, it was not personally served on Mr. Del Carmen Ibarra. Had it been so served, the Certificate of Service has a space to indicate that it's personally served on him. It was personally served on a custodial officer. So there is actually no proof in the record that Mr. Del Carmen Ibarra personally received the notice of hearing. The judge at the removal hearing did ask whether he received the notice to appear, but there was no notice of hearing. And the Certificate of Service does not indicate that he personally received the notice of hearing. So that at least is unclear in the record whether that second notice of hearing was ever personally served on him. Well, let's just say that he appears at the hearing and the IJ says, did you receive this notice? And he says yes. Or if he won't answer, the judge proceeds to go over what information he had and when he knew it and so on. In other words, can the requirements of the process be met without technical compliance on respecting the service of the NOA? Your Honor, our argument is no, it cannot. Because let's even assume that he did definitively receive that notice of hearing on September 26th, five days prior to his hearing, or less than 10 days service is not sufficient. This court did say in Keringethi specifically, quote, would have vested if she had not received this information in a timely fashion, not receive the information at all, but in a timely fashion. So there has to be some time component for fairness of when the non-citizen gets the notice of hearings. So counsel, how can it be that jurisdiction is lacking if the 10 day notice is waivable? I mean, how can you, how can, if it's lacking, how can it be waivable and the statute says it's waivable, right? It does. Your Honor, I think that the reason it would be waivable is again, in the universe in which we're operating, where Keringethi and Vermeen say the regulations control jurisdiction, not the statute, then if timely cure and timely service is an issue, we have to get that timeliness from somewhere. And I think it's fair for this court to infer the 10 days as timely. I don't think it's explicitly relying on the statute to say, if you don't comply with the statute, that's jurisdictional because it is waived. What this court is doing is saying under Keringethi and Vermeen, the government must timely cure the defective notice to appear. And we're saying timely is within 10 days based on this same requirement. Okay. Your time is up. Let me ask my colleagues, whether either has any additional questions for Mr. Shelton on this case. Yeah. If I could just ask about the method of service here, it seemed, it wasn't perfectly clear to me whether what happened was that it was mailed to the custodial officer or whether a court staff handed it to the custodial officer, whether that's what they call personal service, or what they meant was that it was mailed to the custodial officer who personally handed it. How do you read the documents? Your Honor, I believe what is more likely, there is an immigration court with a facility where Mr. Del Carmen Abarca was in custody. So I think it is certainly plausible that court staff did personally give a custodial officer the notice of hearing to pass along to him. And I say that in part because the certificate of service has different areas to check off if it's fax or mail, and neither of those is checked. So I do believe there was- Realistically, how much more could they do? Do they have to go to his particular confinement cell and hand it to him? Wouldn't service on the custodial officer in that circumstance seem to meet personal service? Your Honor, I think the issue is there have been factual cases documented where despite the notice being served on the custodial officer, it is not served on the or have the officer submit a declaration saying, yes, I gave it to him. And we don't have anything other than the certificate here, which shows- If you would make the same argument, I take it for mail, right? The mail is all right. But if they mailed it care of the custodial officer, you would still- I would, Your Honor. Okay. All right. Thank you. Okay. Mr. Burson, do you have anything additional on this case that you would like to argue? Just briefly on the hearing notice issue, Your Honor. The government- Obviously, we're relying primarily on the argument that the hearing notice is irrelevant with respect to jurisdiction. Whatever procedural problems it might give rise to, it's irrelevant to jurisdiction. But the certificate of service here is evidence of- And the court can give it whatever way it wants, but there's no evidence in the court of non-service or irregular service here. The only evidence we have is that hearing notice. And what the district court did here and what the appellee is arguing for is essentially to place the burden on the government to show that there was affirmative receipt here. That placing of the burden directly conflicts with the burden assignment of 1326D itself. Congress passed 1326D not to give aliens removal proceedings a right to collaterally attack. Removal order, aliens had already been granted that by the Supreme Court in 1987. 1326D is a burden assigning statute. In passing that, Congress placed limitations and they said aliens must demonstrate the three requirements of 1326D. In shifting the burden to the government to show affirmative delivery of a hearing notice here, which is essentially what the district court seemed to be requiring, at least in the next case, Valencia, there was a burden shifting there, which is directly contradicted by 1326D. With respect, isn't there a significant difference between the notice of a hearing, which is fundamental to due process, and other aspects of the case? I mean, you're basically saying the entity, i.e. the government, that's initiating the proceeding really has no obligation to let the person who is charged know about it. And 1326D somehow makes no sense. What the government is saying, Your Honor, is that if a defendant at least put forth some evidence that he hadn't received the hearing notice, then fine, we can litigate that. But to find that in the absence of evidence, in the absence of actual physical personal service, whether by mail or through an intermediary custodial officer, to assume then that the hearing notice wasn't delivered, that's where the burden shifting is. But again, I would like my colleague to point out, if you mail it to a custodial officer, that probably makes it because the statute talks about it, or the regulations do. But the burden is still on the government to show that there was mail. What I'm understanding you to say is that the entire requirement with respect to service of the NOH is on the petitioner, which makes no sense to me. 1326 deals with, I think, other issues here, but somehow the government that's initiating the proceeding has to show that notice was given, does it not? It would, Your Honor, in those administrative proceedings. And this is something that the immigration courts grapple with all the time, especially in the context of in absentia hearings. And so, although I am saying that the defendant in a 1326 later on would have to show some evidence that hearing notice wasn't received, it could be as simple as what is required at the administrative hearing, which in the context of first class mail, for instance, all that's required under the law of the Ninth Circuit is for the alien to file an affidavit saying, I didn't actually receive it, and they've met their burden. In that situation, though, the burden, effectively, to start this is on the government. The government in this illustration says, we mailed this, and it complied with the mailbox rule, and so we've met our burden. Now, he has a different defense. But as I understood what you said before was that, in effect, the defendant or petitioner, as the case may be, has a burden to show whether he or she is even being charged, even being brought before the IG. And that made no sense to me. Respectfully, the government would concede that it has to show evidence at least of a regulatory compliant hearing notice, but not evidence of physical receipt, which is what's being asked here. I don't have a problem. Any other questions that my colleagues have of the government in this particular case? Hearing none, the case of United States v. Del Carmen Albarca is submitted.
judges: Boggs, M. Smith, Bennett